IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BYRON W. TURNER                                                                                          PLAINTIFF

v.                                          Case No. 2:12-CV-02114

GRAPHIC PACKAGING INTERNATIONAL, INC.                                     DEFENDANT

**OPINION AND ORDER**

Currently before the Court are Defendant Graphic Packaging International, Inc.'s ("Graphic Packaging") motion for summary judgment (Doc. 27) and brief in support (Doc. 28), Plaintiff Byron W. Turner's response in opposition (Doc. 30), and Graphic Packaging's reply (Doc. 32). For the reasons described herein, Graphic Packaging's motion for summary judgment (Doc. 27) is GRANTED.

**I.     Background**

This lawsuit stems from Plaintiff Byron W. Turner's allegations of employment discrimination against his former employer, Graphic Packaging. Turner maintains that Graphic Packaging failed to excuse him from certain attendance-related violations that were related to his disability and eventually terminated him for these violations contrary to the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101, *et seq.* Turner filed his complaint in this Court pro se on May 24, 2012, after exhausting his administrative remedies through the Equal Employment Opportunity Commission. He received his right-to-sue letter from the Commission on February 24, 2012. Counsel entered an appearance in this Court on Turner's behalf on January 18, 2013, and prepared Turner's response in opposition to the pending motion for summary judgment.

The facts in this case are straightforward. Turner is a 55-year-old Caucasian male who

suffers from a paralyzed left arm, a condition he has had since he was nine years old. During the approximately 14 years that Turner was employed by Graphic Packaging, he was primarily a forklift driver. After receiving two safety violations, he was reassigned in September of 2010 from the forklift to a position in the company's finishing department. (Doc. 30, p. 10).

Graphic Packaging has an attendance policy (Doc. 30-9, p. 2), which states that employees will be assigned "occurrence points" for certain violations. Occurrence points are assigned for tardiness, unexcused absences, failure to call in to work to report an absence, or clocking out of work early. If an employee's absence from work is unexcused, but the employee has provided notice to the company that he will be absent, only one occurrence point is assessed. *Id.* If the absence is unexcused and the employee fails to call in or otherwise give notice about the absence (a "No Call/No Show"), two points are assessed. *Id.* After accumulating six occurrence points over a rolling 12-month period, the employee is provided with an attendance record printout that warns him of the violations. After seven occurrence points are accumulated, the employee is issued a final written warning. If the employee receives eight or more occurrence points, termination will occur. *Id.*

As of September 13, 2010, the first day Turner began his new job in the finishing department, he had already been assigned two occurrence points for attendance violations that took place in the preceding six months, neither of which are disputed here. Sometime during his first day in the finishing department, Turner suffered an injury to his non-paralyzed right arm while working on a glue machine. It appears that during the accident, a portion of the top layer of his skin was removed from the wrist to the elbow of his right arm. On September 14, 2010, the day after the accident, Turner stayed home from work due to the injury but did not call his employer—as required by the attendance policy—to explain the reason for his absence or to request time off. Graphic Packaging

accordingly assigned Turner two occurrence points for being a "No Call/No Show" that day. (Doc. 30-3).

The following day, September 15, 2010, Turner visited his primary care physician, who provided Turner with a note that read, "Please be advised that he has some limitation on the left [paralyzed] arm which with overuse will result in impairment of that arm and possible injury to the right arm. Recommend light duty until he has been eval. for functional capacity." (Doc. 30-2). The note did not specifically mention the September 13 glue machine injury to Turner's right arm.

According to Turner, he provided his supervisor, Scott Monnot, a copy of the September 15 doctor's note and informed Monnot that the injury to his right arm occurred on the job. Turner did not receive any occurrence points for his absence from work on September 15, the date of the doctor's note that he provided to Monnot.

On September 28, 2010, Turner missed work in order to meet with an occupational therapist concerning his left-arm paralysis. He claims he informed his employer in advance that he had a doctor's appointment, and it appears his employer counted the absence as unexcused, but with prior notice. Turner was assessed one occurrence point for this absence.

From September 29, 2011, to February 9, 2011, Turner was assessed an additional 2.5 occurrence points for various attendance infractions, none of which he contests. (Doc. 30, p. 11). He was assessed another occurrence point on February 10, 2011, for an unexcused absence the day after the plant shut down due to inclement weather. Although Turner contends he should not have been assessed a point for the February 10 absence, as weather conditions were poor that day and he could not leave his house, he does not argue that this absence was related to his left arm disability or his ADA claim.

In total, of the 8.5 occurrence points Turner received over the 12-month period from February

21, 2010, to February 21, 2011, he only disputes three of those points: two points for the unexcused "No Call/No Show" absence on September 14, 2010, the day following the glue machine accident; and one point for the absence on September 28, 2010, the day he missed work to consult with an occupational therapist.

On February 21, 2011, Turner was terminated for attendance policy violations, as he had exceeded the maximum of eight occurrence points allowed by the company. Turner believes the true reason for his termination was not poor attendance but illegal discrimination due to his left arm disability. He argues that Graphic Packaging fired him without reasonably accommodating his disability. To support his claim of discriminatory animus, he states that two of his supervisors told him at various times during his employment at Graphic Packaging that they didn't "have a job for a one-armed man." (Doc. 28, p. 6). Further, he points to a single statement made by another supervisor in mid-September of 2010 that it was "not an option" for Turner to refuse to pick something up with his hands and that he needed to pick the object up "or go home." *Id.*

In filing its motion for summary judgment, Graphic Packaging contends that Turner failed to state a prima facie case for disability discrimination because no adverse action was taken against him due to his disability. In the alternative, Graphic Packaging suggests that if the Court finds that a prima facie case has been stated, Turner's claims should still be dismissed because there was a legitimate, non-discriminatory reason for Turner's termination.

## II. Legal Standard

When the court must determine whether summary judgment is appropriate, the burden of proof is on the moving party to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado,*

*Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The court must review the facts in a light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998) (citing *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983)). "Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds." *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir. 1987). "The judge's function is not to weigh the evidence, but rather is to determine as a matter of law whether there are genuine factual conflicts." *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).

### III. Discussion

Turner's ADA claims are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Olsen v. Capital Region Medical Center*, 713 F.3d 1149, 1153 (8th Cir. 2013). To establish a prima facie case for disability discrimination, Turner must show that: (1) he is disabled or is regarded as disabled, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability or perceived disability. *Id.*

The Court will assume without further analysis that for purposes of summary judgment Turner meets the first two prerequisites for establishing a prima facie case, namely, that he is disabled or considered disabled due to his left-arm paralysis, and that he was qualified to perform the essential functions of his job at Graphic Packaging with or without reasonable accommodation. However, regardless of Turner's satisfaction of the first two prongs of the *McDonnell Douglas* test,

his discrimination claim must fail because of the last prong: no genuine dispute of material fact exists to support the notion that Turner was fired due to his disability.

Turner admits that he violated his employer's attendance policy on a number of occasions prior to his termination. Despite this, he argues that his termination was improper because two of his absences were due to a work-related injury, and his employer should not have counted these absences against him.[1] When Turner missed work on September 14, 2010, he admits he failed to call in and report his absence. His excuse for not calling was that he injured his right arm on the job, and because his left arm was disabled, he was unable to use the phone to call work. (Doc. 30-1, pp. 6-7). Turner submitted no doctor's note or other medical evidence to his employer that would indicate that his disability prevented him from using the phone on that date. Further, Turner did not set forth facts to show that he informed his employer that (1) his inability to call in to work that day was related to a disability, or (2) he needed a reasonable accommodation related to his disability.

It is not the responsibility of the employer to divine that an accommodation is needed. Instead, "'it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'" *Wallin v. Minnesota Dep't of Corr.*, 153 F.3d 681, 689 (8th Cir. 1998) (quoting 29 C.F.R. app. § 1630.9 (1992)). Unless the disability and need to accommodate it are obvious, the employee must provide some kind of notice to the employer that an accommodation is needed as a prerequisite to a claim for discrimination. *See Ballard v. Rubin*, 284 F.3d 957, 962 (8th Cir. 2002) (finding no violation of the ADA due to employee's failure to have requested an

---

[1] He also contends that another absence on February 10, 2011, should not have counted against him because there was inclement weather on that date, and "the Company's Employee Handbook [did] not hav[e] any inclement weather policy." (Doc. 30, p. 11). As Turner does not even attempt to relate the company's treatment of this absence to his claim of discrimination, the Court will not consider it.

accommodation from employer).  Here, the Court cannot find that Turner's need for an accommodation following his injury would have been obvious to Graphic Packaging, as Turner had never requested an accommodation in his 14 years of work for the company, and as he admittedly did not consider himself to be disabled.  (Doc. 28-1, pp. 38-39).

As for the September 28, 2010 absence from work that Turner also disputes, even if the Court were to assume that Turner informed his employer ahead of time that he needed to miss work on that date to consult with an occupational therapist regarding his disability, there is no evidence that Graphic Packaging ultimately refused to excuse him because of his disability or perceived disability.  The evidence of discriminatory animus in the case is nearly nonexistent.  Turner alleges that Brian Christello, a supervisor, told him once or twice "off and on through the years" that the company "d[id]n't have a job for a one-armed man," *id.* at p. 40; however, Turner does not claim that Christello made these allegedly discriminatory statements at or around the time Turner suffered his glue machine injury.  Instead, Turner is unsure of the timing of these statements and cannot put them in any context for the Court.

According to Turner, another employee, Patrick Combs, also allegedly stated "one time" in "2008, 2009, somewhere around there," that the company did not have a job for a one-armed man. *Id.* at p. 41.  Employee Kerry Clovis also said the same thing, again on one occasion, to Turner sometime in mid-2009.  *Id.* at p. 42.  Turner cannot tie Combs's or Clovis's comments to Graphic Packaging's decision to award occurrence points to Turner for two absences from work in late 2010.  Furthermore, even if certain employees made stray comments of this nature during Turner's employment, the fact remains that Graphic Packaging *did* have a job for Turner, one which he successfully retained for over a decade until, by his own admission, he committed both safety and

attendance infractions.

Turner's final allegation along these same lines is that a supervisor, Jim Peterson, had a conversation with Turner in mid-September of 2010, telling Turner that it was "not an option" to refuse to pick something up due to his disabled left arm and that Turner needed to "do it or go home." *Id.* The Court finds that there is nothing discriminatory on its face about Peterson's comment.

To the extent that Turner makes excuses for his attendance policy violations and believes that his supervisors should have been more lenient under the circumstances, the Court will not engage in second-guessing Graphic Packaging's decision to fire Turner, particularly in light of the fact that he was put on notice of his accumulating occurrence points and never objected to them during the course of his employment. *See* Doc. 28-2, p. 4. The evidence presented to the Court when viewed in the light most favorable to Turner demonstrates that he maintained consistent employment for 14 years at Graphic Packaging until his safety violations caused him to be removed from his position as a forklift driver, and his repeated absences, tardy arrivals, and early clocking out over the course of a 12-month period caused him to lose his job. Turner admits he never asked for an accommodation from his employer at any time, including after his right-arm injury, and he does not dispute that he violated the attendance policy several times during the time period in question for reasons unrelated to his injury.

"'Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions . . . Rather, [the courts'] inquiry is limited to whether the employer gave an honest explanation of its behavior.'" *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994) (quoting *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (internal quotation

omitted)). A court is empowered to decide on summary judgment whether there is sufficient evidence for a reasonable jury to infer that an employer's articulated reason for firing an employee is actually false and that discrimination was the true motivation. *Wilking v. Cnty of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998). "When an employer articulates a reason for discharging [an employee] not forbidden by law, it is not [the court's] province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [employee's] termination." *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997) (quoted in *Wilking*, 153 F.3d at 873).

As there is no evidence that Turner was fired from his job at Graphic Packaging because of his disability or perceived disability, he has failed to establish a prima facie case of a violation of the ADA. Accordingly, his claims must be dismissed.

### IV. Conclusion

For the reasons stated above, IT IS ORDERED THAT Defendant Graphic Packaging's motion for summary judgment (Doc. 27) is GRANTED, and this case is DISMISSED WITH PREJUDICE. Judgment will be entered accordingly.

IT IS SO ORDERED this 23rd day of January, 2014.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE